UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GUO XIN ZHENG,

                        Petitioner,

    v.

IMMIGRATION AND CUSTOMS
ENFORCEMENT FIELD OFFICE
DIRECTOR, et al.,

                      Respondents.

Case No. 2:25-cv-02483-TLF

ORDER GRANTING IN PART THE
AMENDED PETITION FOR A WRIT
OF HABEAS CORPUS (DKT. 17)

Petitioner Guo Xin Zheng, a citizen and native of China, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 17 at 2; Dkt. 21 at 1. He was re-detained on December 4, 2024. Dkt. 21 at 5; Dkt. 23-6. On September 15, 2025, an Immigration Judge ("IJ") denied petitioner's asylum claim, ordered him removed, but granted withholding of removal to China. Dkt. 17 at 6, 45-46; Dkt. 21 at 5.

In December 2025, petitioner filed a pro se habeas petition. Dkts. 1, 3. The Court appointed the Federal Public Defenders ("FPD") to consult with petitioner on whether their representation was appropriate for his case. Dkt. 10.

ORDER GRANTING IN PART THE AMENDED
PETITION FOR A WRIT OF HABEAS CORPUS
(DKT. 17) - 1

In February 2026, the Court granted petitioner's unopposed motion to amend his petition which he filed through his FPD counsel. Dkts. 12, 16. Petitioner's amended petition (Dkt. 17) is the operative petition for this matter.

Petitioner argues (1) his continued detention violates due process under *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) his re-detention violated due process under *Mathews v. Eldridge*, 424 U.S. 319 (1976); (3) respondents' current efforts to remove petitioner to a third country are unlawful; and (4) respondents' third country removal policy is punitive and unconstitutional. Dkt. 17 at 33, 36, 38, 39.

Petitioner requests the Court (1) order his immediate release; (2) enjoin his re-detention absent notice, an opportunity to be heard, and valid travel documents among other conditions; (3) enjoin his removal to a third country without notice and a meaningful opportunity to respond; and (4) enjoin his removal to any country where he is likely to face imprisonment or other punishment upon arrival. Dkt. 17 at 41-42.

The parties consent to the jurisdiction of a Magistrate Judge. Dkt. 18. For the reasons below, the Court GRANTS the amended habeas petition (Dkt. 17) IN PART, and ORDERS respondents to release petitioner as discussed below.

## I.      BACKGROUND

In 2023, petitioner entered the United States and was detained. Dkt. 17 at 7; Dkt. 21 at 4. Soon after, petitioner was released under an Order of Release on Recognizance ("OREC"). Dkt. 17 at 7; Dkt. 21 at 4; Dkt. 23-3 (OREC).

In June 2023, petitioner filed an asylum claim before the Immigration Court. Dkt. 17 at 7; Dkt. 21 at 5. Petitioner states he "endured persecution for practicing his Christian religion in China." Dkt. 17 at 7.

ORDER GRANTING IN PART THE AMENDED
PETITION FOR A WRIT OF HABEAS CORPUS
(DKT. 17) - 2

On December 3, 2024, petitioner pleaded guilty to conspiracy to commit theft in New Hampshire. Dkt. 17 at 7; Dkt. 21 at 5. On December 4, 2024, ICE re-detained petitioner, citing this conviction. Dkt. 17 at 7; Dkt. 21 at 5; Dkt. 23-6 (Form I-213); Dkt. 23-7 (Administrative Warrant). Petitioner was then transferred to NWIPC. Dkt. 17 at 7; Dkt. 21 at 5.

On September 15, 2025, an IJ denied petitioner's asylum application, ordered his removal, but granted withholding of removal to China. Dkt. 17 at 6, 45-46; Dkt. 21 at 5. Petitioner did not appeal the IJ's removal order. Dkt. 17 at 8, 45-46; Dkt. 21 at 5.

In October and November 2025, respondents met with petitioner about third country removal. Respondents state that on "October 21, 2025, a Deportation Officer ('DO') interviewed Petitioner and verbally informed him that DHS intended to seek his removal to a third country." Dkt. 21 at 5. "The DO presented Petitioner with a list of visa-free countries Petitioner could go to if he had a valid Chinese passport and was willing to buy a ticket." Dkt. 21 at 5. On "November 4, 2025, another DO provided Petitioner with a list of visa-free countries for China passport holders and informed him that he could purchase tickets to those countries." Dkt. 21 at 5-6.

Petitioner then filed a pro se habeas petition (Dkts. 1, 3) before amending his petition through counsel. Dkts. 12, 16, 17.

In his amended petition, petitioner states that he "has minimal understanding of English" which limited his ability to communicate with officials at NWIPC in the meetings mentioned above and elsewhere. Dkt. 17 at 8.

ORDER GRANTING IN PART THE AMENDED
PETITION FOR A WRIT OF HABEAS CORPUS
(DKT. 17) - 3

## II.    DISCUSSION

### A.  *Zadvydas*

"[W]hen [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days" also known as "the 'removal period.'" 8 U.S.C. § 1231(a)(1)(A). The removal period begins, among other options, on the "date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i).

While a "special statute authorizes further detention if the Government fails to remove the alien during those 90 days," allowing the "indefinite detention" of noncitizens "would raise serious constitutional concerns." *Zadvydas* 533 U.S. at 682 (citing 8 U.S.C. § 1231(a)(6)). "[T]o avoid a serious constitutional threat," the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The Supreme Court found six-months was a "presumptively reasonable period of detention". *Id.* at 701. This period starts running "following the entry of the order of his removal." *Tran v. Bondi*, No. C25-01897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025) (citing *Zadvydas* 533 U.S. at 701). "At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period." *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020).

Therefore, "[t]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal," or in other words, whether

there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas* 533 U.S. at 699, 701.

Petitioner "bear[s] the initial burden of providing 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Trinh*, 466 F. Supp. 3d at 1082 (quoting *Zadvydas*, 533 U.S. at 701). "Once that initial showing is made, the burden shifts to the Government to respond with evidence sufficient to rebut it." *Id.*

"[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute" and the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Zadvydas*, 533 U.S. at 699-700.

If *Zadvydas* is satisfied, release is warranted even if the petitioner has a criminal record. *Baltodano v. Bondi*, --- F. Supp. 3d ----, 2025 WL 3484769, at *5 (W.D. Wash. Dec. 4, 2025) (quoting *Zadvydas*, 533 U.S. at 684) (explaining that while the "Court does not take lightly respondents' warning that petitioner is still 'a danger to the community' . . . the Court is bound by the holding in *Zadvydas*, a case that notably involved [an] individual with 'a long criminal record' and 'a history of flight.'"); *see also Hamedani v. Bondi*, No. 2:25-cv-02509-JNW, 2026 WL 452424, at *3-4 (W.D. Wash. Feb. 18, 2026) (noting that despite the petitioner's "criminal history . . . [h]e must be released" under *Zadvydas*).

Here, respondents assert petitioner's six-month presumptively reasonable period of detention began on October 15, 2025 (the date petitioner's un-appealed removal order became final), and will end on April 15, 2025. Dkt. 21 at 7.

Petitioner acknowledges these dates (*e.g.,* Dkt. 17 at 34; Dkt. 24 at 5) but nonetheless suggests in a footnote that "it may be more reasonable to calculate the removal period with September 15, 2025, as the date the order became final." Dkt. 17 at 34 n.47. And, petitioner urges he "made no earlier affirmative waiver of appeal through no fault of his own" as his attorney did not consult him on the order and he only learned of the order through his sister. Dkt. 17 at 34 n.47. The Court need not address this allegation further as a petitioner can still challenge his detention within the presumptively reasonable six-month period. *Trinh*, 466 F. Supp. 3d at 1092.

Petitioner asserts that he would overcome the presumption of reasonableness as "[i]t appears ICE has taken no other concrete actions to attempt to lawfully remove Mr. Zheng to a third country" other than "provid[ing] Mr. Zheng with English language documents that he cannot read." Dkt. 17 at 3.

The record shows, "[i]n October 2025, and again in November 2025, ICE officers contacted Mr. Zheng about potential third-country removal." Dkt. 17 at 8. At both meetings, an officer "hand[ed] Mr. Zheng a list of 'visa-free' countries for people with Chinese passports" and "t[old] him (apparently in English) that he could go to one of these countries if he could purchase his own ticket there." Dkt. 17 at 9-10. "Mr. Zheng recalls no interpreter" and "[h]e did not have a good understanding of what was said." Dkt. 17 at 8. "[I]n any event, he lacks the financial means to" purchase a plane ticket. Dkt. 17 at 9.

Petitioner asserts the respondents failed to comply with the process required under 8 U.S.C. § 1231(b) which "delineate[s] the proper procedures by which a country may be designated for removal." Dkt. 17 at 20.

ORDER GRANTING IN PART THE AMENDED
PETITION FOR A WRIT OF HABEAS CORPUS
(DKT. 17) - 6

Under this process, there are "four consecutive removal commands". *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005). First, the "Attorney General shall remove [a noncitizen] to the country the [noncitizen] so designates."  8 U.S.C. § 1231(2)(A)(ii). Second, "[i]f an alien is not removed to a country designated" under the above provision, "the Attorney General shall remove the [noncitizen] to a country of which the [noncitizen] is a subject, national, or citizen," *id.* at (2)(D), which is unavailable here because of the IJ's withholding order. Dkt. 17 at 45-46. Third, "[i]f [the noncitizen] is not removed to a country under the previous subparagraphs . . . the Attorney General shall remove the [noncitizen] to any of" the various categories of countries listed in the section. *Id.* at (2)(E). Finally, "[i]f impracticable, inadvisable, or impossible to remove the [noncitizen] to each country described in" the above list, the government can choose "another country whose government will accept the [noncitizen] into that country." *Id.* at (2)(E)(vii).

Petitioner argues respondents "seemingly tried to encourage him to voluntarily depart (telling him he would have to buy his own plane ticket) to only a list of countries Respondents identified as 'visa-free.'" Dkt. 17 at 10. Petitioner contends respondents have not properly started the required process for third country removal; and petitioner asserts "[t]here is no evidence that Respondents will be able to lawfully remove Mr. Zheng to a third country in the reasonably foreseeable future nor that any efforts to do so lawfully are actually underway." Dkt. 17 at 11; Dkt. 24 at 5 ("There is no evidence that Mr. Zheng will be removed in the next month or so before April 15, 2026 (which marks six months from the date his removal order became administratively final).").

Respondents do not dispute petitioner's factual allegations above — the format of the two meetings in October and November (*see* Dkt. 21 at 5-6; Dkt. 22 at 3-4) or the lack of any concrete travel documents, requests, or other efforts with any potential third country. *See* Dkt. 21 at 7.

Even so, respondents urge that "DHS continues to pursue Petitioner's removal from the United States to a third country" and "[t]hese efforts remain ongoing . . ." Dkt. 22 at 4.

This Court has rejected reliance on similar generalized assertions. *See*, *e.g.*, *Saadhom v. Bondi*, No. 2:26-cv-00425-TL, 2026 WL 698786, at *5 (W.D. Wash. Mar. 12, 2026) (rejecting more specific assertions that the government "submitted travel document requests to Canada, Panama, and Costa Rica" as "they are silent as to whether they have heard back from those countries" and can offer no timeline or "specific date of anticipated removal."). Respondents' refer to a list of "visa-free" countries, yet they do not specifically identify any potential third country as a candidate for removal. Dkt. 21 at 5-6.

Respondents also argue the Supreme Court in *Zadvydas* "implicitly recognized that six months is the earliest point at which a noncitizen's detention could raise constitutional issues." Dkt. 21 at 7. But the Supreme Court in *Zadvydas* created only a "*presumptively* reasonable," benchmark of 6-months and not a legally unchallengeable period of six months. *Zadvydas*, 533 U.S. at 701 (emphasis added); *see also Trinh*, 466 F. Supp. 3d at 1092.

Based on the respondents' lack of any concrete action under the required process for third party removal, the Court finds petitioner has established there is no

ORDER GRANTING IN PART THE AMENDED
PETITION FOR A WRIT OF HABEAS CORPUS
(DKT. 17) - 8

significant likelihood of removal in the reasonably foreseeable future. *See*, *e.g.*, *Elshourbagy v. Bondi*, --- F. Supp. 3d ----, 2025 WL 3718993, at *4 (W.D. Wash. 2025) (noting "[t]here is no evidence that steps have been taken to obtain a Ugandan travel document for Petitioner, that Uganda has any interest in accepting Petitioner, or even that there has been any communication with Uganda regarding Petitioner at all" and "Respondents cannot overcome the meritorious arguments in Petitioner's pending habeas petition by simply handing Petitioner an application for travel documents . . .").

The Court orders respondents to release petitioner within three days of this Order. Respondents shall release petitioner from custody under reasonable and appropriate conditions of release. *Zadvydas,* 533 U.S. at 699-700. Respondents shall promptly provide petitioner a hearing before release solely to determine what conditions are appropriate. Immediately after this hearing, petitioner must be released. Alternatively, if respondents cannot provide petitioner this hearing within three days, respondents shall release petitioner under the conditions of his most recent order of supervision.[1]

### B. Third Country Removal

Petitioner also asks the Court to order that respondents "may not remove or seek to remove Mr. Zheng to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings." Dkt. 17 at 42. He also asks the Court to enjoin respondents' ability to "remove him to any country where he is likely to face imprisonment or other punishment upon arrival." Dkt. 17 at 42.

---

[1] As the Court releases petitioner based on its review of his final order of removal under *Zadvydas*, it need not also address his claims under *Mathews*. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1318 n.1 (W.D. Wash. 2025).

ORDER GRANTING IN PART THE AMENDED
PETITION FOR A WRIT OF HABEAS CORPUS
(DKT. 17) - 9

"A plaintiff or petitioner 'seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Elshourbagy*, 2025 WL 3718993, at *9 (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

This Court granted injunctive relief regarding third country removal in similar circumstances. *Elshourbagy*. *Id.* at *9 (requesting this Court "'[o]rder that Respondents may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings.'").

For the first requirement, this Court noted "'[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Id.* (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

For the second requirement, this Court held "[w]ere Petitioner to be 'removed from the United States to the custody of a foreign sovereign' . . . the legal remedies by which Petitioner might redress this harm would be substantially diminished, if not extinguished entirely." *Id.* (quoting *A.A.R.P. v. Trump*, 605 U.S. 91, 93 (2025)). The Court noted respondents' policies (such as the July 9, 2025, ICE Memorandum, which respondents cite in the present case (Dkt. 21 at 8)), "fall far short of what court[s] in this District and Circuit have held that due process requires." *Id.* at 8.

ORDER GRANTING IN PART THE AMENDED
PETITION FOR A WRIT OF HABEAS CORPUS
(DKT. 17) - 10

For the third and fourth requirements, this Court held that "the balance of equities tips steeply in [petitioner's] favor, because his interest in avoiding the unlawful deprivation of his liberty outweighs the minimal burden on Respondents" and "'it is always in the public interest to prevent the violation of a party's constitutional rights.'" *Id.* at *9 (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)).

Under these circumstances, the Court finds injunctive relief is appropriate regarding third country removal. The relief granted will also give petitioner the ability to contest removal to a third country where he is likely to face imprisonment or other harm.[2]

**C. Punitive Policy Claim**

Finally, petitioner urges this Court to hold that respondents' third country removal policy is unconstitutionally "punitive" under the Fifth and Eighth Amendments. *E.g.* Dkt. 17 at 39-41.

In so arguing, petitioner asserts a November 24, 2025, article from the "New Yorker" titled "Disappeared to a Foreign Prison" (Dkt. 17 at 78), in addition to emails and declarations from other immigration proceedings. Dkt. 17 at 49, 53, 57, 60, 64, 68, 73, 100, 107. These declarations describe attempts to remove petitioners from separate immigration proceedings to third countries, such as Mexico. *E.g.* Dkt. 17 at 49, 53, 56, 59, 67, 73.

---

[2] Petitioner also requests additional injunctive relief, including numerous limits on any potential future re-detention. *E.g.* Dkt. 17 at 41-42. The Court declines to grant this relief and adopts the reasoning of *Saadhom*, 2026 WL 698786, at *10.

ORDER GRANTING IN PART THE AMENDED
PETITION FOR A WRIT OF HABEAS CORPUS
(DKT. 17) - 11

This Court has rejected reliance on similar references to separate immigration proceedings as those are "specific to a particular population and particular destination countries" which "do not extend to these circumstances" in the present matter. *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025); *see also Saadhom*, 2026 WL 698786, at *7 (rejecting reliance on similar declarations).

Thus, on the present record, the Court declines to address petitioner's punitive claim which is DENIED without prejudice.

### III.    CONCLUSION

Accordingly, the amended petition for a writ of habeas corpus (Dkt. 17) is **GRANTED IN PART** and the Court **ORDERS**:

1) Respondents **SHALL** release petitioner **within three days (*see* Fed. R. Civ. P. 6(a)(1))** of this Order.

    a. Prior to release, respondents must provide petitioner a hearing solely to determine the appropriate conditions of his release. Immediately following this hearing, petitioner must be released.

    b. Alternatively, if respondents cannot provide a hearing within three days, they must release petitioner under his most recent previous release conditions.

2) Within **two days (*see* Fed. R. Civ. P. 6(a)(1))** of petitioner's release, respondents **SHALL** submit to the Court a declaration confirming the date and time petitioner was released from custody.

ORDER GRANTING IN PART THE AMENDED
PETITION FOR A WRIT OF HABEAS CORPUS
(DKT. 17) - 12

3)  Respondents **SHALL NOT** remove or seek to remove petitioner to a third country without notice and meaningful opportunity to respond in conformity with due process.

4)  Petitioner's request for an order prohibiting third country removal as unconstitutionally punitive is **DENIED** without prejudice.

Dated this 27th day of March, 2026.

Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING IN PART THE AMENDED
PETITION FOR A WRIT OF HABEAS CORPUS
(DKT. 17) - 13